· CASE 46—PETITION EQUITY—OCTOBER 5.

# Willett's Adm'r v. Rutter's Adm'r.

84 317
e110 903

### APPEAL FROM HARRISON CHANCERY COURT.

1. WHEN A WILL DIRECTS THE PAYMENT OF A LEGACY AT SOME FUTURE TIME after the decease of the testator, or upon the happening of a contingent event, and there is no provision for vesting the legacy immediately, then the future time fixed, or the happening of the contingency, is of the essence of the gift, and the legatee takes only a contingent interest, unless the other provisions of the will show a contrary intention, as by directing the application of the interest or rents in the interim to the use of the legatee.

    A testator provided that "if, at my death, there shall be any surplus stock or personal property, or any cash or cash notes on hands, it is my will and desire that the stock and personal property may be sold, the money collected and loaned out during the life of my wife, and at her death I desire that it may be divided between my said daughter and granddaughter." *Held*—That the daughter and granddaughter did not take a vested interest, the other provisions of the will showing that by this provision the testator intended what its language taken alone imports.

2. SAME.—The testator having provided that "money" be loaned out during the life of his wife, and that at her death "it" be divided between his children, the pronoun "it" is treated as referring to both principal and interest, and the devisees taking only a contingent interest in the principal, took the same kind of an estate in the interest, no directions having been given for the use of the interest for the benefit of the legatees, and their maintenance having been otherwise provided for.

A. H. & J. Q. WARD AND C. W. WEST FOR APPELLANT.

1. The testator gave to his daughter and granddaughter each a life estate in all the property, both real and personal, devised to them, and having each a life estate, each was entitled to the rents, issues and profits of her share. (Pattie v. Hall, 2 B. M., 461; Hocker v. Gentry, 3 Met., 467.)

2. Postponing the time when the slaves and money were to be divided did not fix the time when the estate was to vest. The life estate in the slaves and money vested when the will was probated, just as it did in the land.

SAME COUNSEL IN PETITION FOR REHEARING.

1. The 6th clause of the testator's will created a vested interest in Mary W. Willett. The cases of Roberts' Ex'r v. Brinker, 4 Dana, 570, and

Combs, &c., v. Branch, have, in effect. been overruled by subsequent cases, which are in accord with the decisions of other courts. (Rawlings, &c., v. Lawler, &c., 2 Bush, 160; Fields' Heirs v. Hallowell & Co., 12 B. M., 517; Arnold v. Arnold, 11 B. M., 92; Dowling v. Dobyns, 5 Dana, 517; Hocker v. Gentry, 3 Met., 473; Herbert's Ex'rs v. Post, 26 N. J. Eq., 278; Hawkins on Wills, 232; Jarman on Wills, 756, 763; Howell v. Green, 2 Vroom, 572; Kelso v. Dickey, 7 Searg. & Watts, 274; Saunders v. Vautier, 1 Cr. & Ph., 240; Peckham v. Gregory, 4 Hare, 396; Williams on Executors, pages 1069, 1198; Vandyke v. Vanderpool, 14 N. J. Eq., 206; Chess' Appeal, 87 Pa. St., 364; Williamson v. Williamson, 18 B. M., 329; Dawson v. Killett, 1 Brown's C. C., 124, note 1; Mercantile Bank v. Ballard's Ass'ee, 7 Ky. Law Rep., 478; McArthur v. Scott, 113 U. S., 380.)

2. Upon the question as to what disposition is to be made of the income in such a case until the legacy is payable, the authorities are not agreed. (Jarman on Wills, 4th ed., p. 532, 5th ed., p. 723, vol. 3; Wyndam v. Wyndam, 3 Brown's C. C., 57; Shaw v. Cunliffe, 4 B. C. C., 144; Rob. on Legacies, White ed., 276; Redfield on Wills, part 2, p. 568, 'ed. of 1866; Nichols v. Osborne, 2 P. Williams, 419; Sheppard v. Ingram, Ambler, 450.)

As there is no general residuary clause in the will to be construed in this case, and the legatees are the same as the heirs at law, it does not matter which construction the court gives.

LUCIUS DESHA, JR., AND T. T. FORMAN FOR APPELLEE.

1. Where there is no gift, but by a direction to pay at a future time, or on a given event, the *vesting* will be postponed until after that time has arrived, or that event has happened, unless from particular circumstances a contrary intention is to be collected. (Williams on Executors, side page 1059; Jarman on Wills, vol. 1, side page 762; Redfield on Wills, vol. 2, p. 226; Coombs v. Branch, 4 Dana, 547: Roberts' Ex'r v. Brinker, 4 Dana, 570.)

2. As the life estate consists only in the use and enjoyment, if that be postponed, the estate itself, or the vesting thereof, is likewise postponed.

3. The title to the accumulations on the fund follows the title to the principal fund. and is subject to the same limitations. (Broom's Legal Maxims, side page 369.)

A. DUVALL OF COUNSEL ON SAME SIDE.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The controversy on this appeal from the Harrison Chancery Court involves the construction of the sixth clause of Alex. Rutter's will, which is as follows, to-wit:

" If, at my death, there shall be any surplus stock or personal property, or any cash or cash notes on hands, it is my will and desire that the stock and personal property may be sold, the money collected and loaned out during the life of my wife, and at her death I desire that it may be divided between my said daughter and granddaughter."

Viewing this clause in the light of its own language, the question is, first, did the legatees mentioned therein take a vested interest in the fund therein mentioned at the death of the testator, or did they take only a contingent interest therein dependent on the death of the testator's wife; or, second, granting that the legatees took only a contingent interest in the principal of the sum directed to be divided between them at the death of the wife, did they take a vested interest in the interest arising from the principal?

First, as to the principal: In the first volume of Jarman on Wills, side page 760, it is said as to " the rules which regulate the vesting of personal legacies, the payment of which is postponed to a period subsequent to the decease of the testator, a leading distinction is, that if futurity is annexed to the substance of the gift, the vesting is suspended, but if it appears to relate to the time of payment, the legacy vests instanter."

Thus, if the legacy is, in the first instance, given or devised to the legatee, as I give or devise to A certain property, and is then directed to be paid at some definite period of time after the decease of the testator, as when the legatee arrives at twenty-one years of age, then the legacy vests immediately.

The same rule obtains when the legacy is given to two or more persons, with words directing a division or

distribution of the legacy among them at some future time, as when one shall attain the age of twenty-one years. In other words, the testator must, by the provisions of the will, give an immediate interest in the estate to the legatee ; and the superadded words fixing the time of payment or distribution to some future time must relate to the time of passing the possession of the property to the legatee and not to the gift. (Jarman on Wills, vol. 1, side page 761.)

On the other hand, "if the payment or distribution is deferred, not merely until the lapse of a definite interval of time, which will certainly arrive, but until an event, which may or may not happen, the effect, it should seem, is to render the legacy itself contingent."

Also, "where the only gift is in the direction to pay or distribute at a future age, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift." (Jarman on Wills, p. 762.)

Also, in the case of Roberts' Ex'rs v. Brinker, 4 Dana, 570, this court says: "It is an established rule of construction respecting legacies, that when there is no other legatory expression or intention than that implied in a direction to pay or distribute at a future time, or on a contingent event, the bequest, nothing else appearing, should be considered as contingent. But as, *prima facie*, it may be presumed that a testator did not intend that any interest bequeathed in his will should lie dormant or undisposed of after his death, or should ever lapse, therefore, a slight circumstance may be sufficient for showing that a legacy is vested and not contingent."

Also, in the case of Combs' Devisees v. Branch, 4 Dana, 548, it is said: "Where there is nothing legatory, except what may be implied in the direction to distribute or pay to the legatee, the legacy shall be deemed contingent until the time for distribution or payment, nothing else appearing for determining the testator's intention; for in such a case, the time of distribution or payment is considered as annexed as an implied condition to the gift itself."

Also, to the same effect is the case of Briscoe's Devisees v. Wickliffe, 6 Dana, 158.

Thus we see that when the gift is created simply by directing the payment or distribution of the legacy at some future period of time after the decease of the testator, or upon the happening of a contingent event, and there is no provision in the will for vesting the legacy immediately, then the future time fixed or the happening of the contingency is of the essence of the gift.

It is true that this rule does not prevail when the provisions of the will show a contrary intention of the testator, such as directing the application of the interest accruing on the fund in the interim to the use of the legatee, or application of the rents or use of the property in the interim for the benefit of the legatee. These circumstances will show almost conclusively that the testator intended the body of the property to vest in the legatee immediately also.

So also, if it appear that any interest devised in the will would fail for the want of a legatee, or be undisposed of after his death, in consequence of the legacy not vesting in the legatee until the future period of time, or the happening of the event fixed for the enjoy-

ment of the legacy by the legatee, then the presumption would be strong that the testator, not wishing such a state of affairs to exist, intended the legacy to vest in the legatee immediately.

But here the other provisions of the will show that the testator intended this provision of the will to mean just what its langurge, taken alone, legally imports. For he provides that this fund should be kept out at interest, and by implication that his executor should be the trustee for that purpose.    Also, that the legatees should only have a life estate in the property devised to them, and at their death the property was to go to their living children, and the descendants of those that had died, if any ; and in case either one of the legatees should die without leaving living children, or descendants of those that had died, then the estate devised to her should go to the other legatee for life, and at her death to her living children, and the descendants of such as might be dead, if any.    And in case both of said legatees should die without living children, or living descendants of such as might be dead, then said estate to go to his nearest blood relations.

So we see that the testator provided in the will against the lapse of any of the estate bequeathed, and against the possibility of any of it being undisposed of.

It is also manifest, from the other provisions of the will, that the testator meant the clause of the will in question to have the effect that its language legally imports ; for the other clauses which give legacies to these legatees are different in language.    They start out by

the expressions, "I give and bequeath to," etc.    These gifts also related to land and slaves; the devise of them to the legatees was direct, and being of different property from that mentioned in the sixth clause, and not so easily diverted from the testator's intentions as expressed in the will, and it being the clear intention of the testator, as expressed repeatedly in the will, that the estate devised should be confined in its uses to his blood relations, it is manifest that he meant to use the language of the sixth clause of the will as giving the legatees a contingent interest in the fund therein mentioned upon the death of his wife.    Also, the will was evidently drawn by a draftsman experienced in the technical terms of conveyancing, and that the language employed in the sixth clause, which discriminated the character of gift therein mentioned from that given by the other clauses, was evidently used intentionally and advisedly.

For the foregoing reasons, we conclude that the testator intended, as the language of the sixth clause indicates, to give to the legatees a contingent interest in the fund therein mentioned.

As to the second proposition, to-wit: That, granting that the principal of the sum given was intended to be given to the legatees contingently, they were to take a vested interest in the interest arising from said fund.

It is to be observed that the "money" was to be loaned out "during the life of the wife, and at her death it was to be divided," etc.    It was doubtless known to the draftsman of the will that interest due becomes a part of the principal, and the pronoun "it" was, therefore, intended to refer to both prin-

cipal and interest. Besides, no directions having been given for the use of the interest for the benefit of the legatees, and their maintenance having been otherwise provided for by the testator, no presumption arises that he intended the interest to be used for their benefit, but that the principal and interest should go together and be divided between them at the death of the wife.

The appellant's intestate having died unmarried and childless before the wife of the testator, it follows, according to the foregoing views, that she took nothing under the sixth clause of the will, and that the chancellor did right in rejecting appellant's claim for one-half of the rents collected by the administrator, with the will annexed, of Alex. Rutter, arising from the land which was purchased under a judgment of the Harrison Circuit Court with the funds devised by the sixth clause of the will.

Also, the chancellor did right in allowing the offset, in the way of rents, for the said land for the time she used and controlled it, against the claim of $284, together with interest thereon, balance due said intestate by said testator as her guardian.

The case of Hocker, &c., v. Gentry, &c., reported in 3 Met., 463, and relied on by appellant as controlling this case, does not govern it.

In that case, as in this, the fund devised was to be divided among a class of legatees at a future period of time. This court held in that case that the legatees took a vested interest in the fund devised to them, but the decision rested upon the ground that the will contained apt words of conveyance, as "I devise to the

children of my deceased son," etc. The court, therefore, held that the legatees took a vested interest in the property devised. Here no such words occur in the sixth clause of the will. It must, therefore, be construed according to the rules above mentioned.

The judgment of the lower court is affirmed.