CASE 106—ACTION FOR A CONSTRUCTION OF THE WILL OF ANDREW DOHN, DECEASED—MAY 17.

# Dohn's Exr. v. Dohn and Others.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT CONSTRUING THE WILL AND PLAINTIFF'APPEALS. REVERSED.

CONSTRUCTION OF WILL—PASSING OF ANNUITY TO ADMINISTRATOR— VESTED ESTATES—POSTPONEMENT OF DISTRIBUTION—PERPETUITY.

Held: 1. A testator, by his will, placed his estate in the hands of a trustee, and by item 4 of the will directed the payment to his widow of $100 per month during her lifetime, and by item 5 directed a payment to each of his children of the sum of $75 per month until the youngest child should reach 25 years of age. By item 6 he then provided that after the death of his wife, and when his youngest child should reach 25 years of age, his entire estate should be divided among his children or their heirs, and that "the issue of the child or children dying shall inherit the share of its parent." Held, that items 5 and 6, which provide for payments at different times, can not be so construed together as to make the last clause item 6 apply to the gift in item 5, so as to make the issue of a child take the child's place; but neither can the gift of the monthly payments to the children be limited to their lives, since it is absolute in terms, and therefore upon the death of one of them before the time fixed for distribution his right to the monthly payments passed to his administrator; and the fact that the testator's widow, who is one of the distributees of her deceased son's estate, will thus take a greater interest than the testator contemplated, can not change the construction.

2. While it is the policy of the law that estates shall vest at the earliest moment, the estates devised under item 6 are conditional upon the survival of the beneficiaries until the time fixed for

Dohn's Exr. v. Dohn and Others.

distribution, and upon the death of one of them prior to that time his interest, not having vested, did not pass to his heirs and distributees.

3. The postponement of the vesting of the estate until the death of the widow or the arrival of the youngest child at 25 years of age, whichever should happen last, does not fix a definite time in the future for the vesting of the estate, so as to create a perpetuity, as the arrival at 25 years of age of the youngest child means the arrival at that age of such child of the testator as shall then be his youngest living child, and not the time at which the youngest child now living would reach that age if he should live until that time.

KOHN, BAIRD & SPINDLE, AND GEORGE L. EVERBACH, ATTORNEYS FOR APPELLANTS.

## POINTS AND AUTHORITIES.

1. A provision for maintenance in a will is personal to the legatee and does not survive to its personal representative. Jarman on Wills (5 Am. Ed.), vol. 2, pp. 463, 464, 462.

2. Where the only provision in a will devising an estate provides the time when the estate devised is to be enjoyed, and contemplates the contingency of death before enjoyment, and provides who shall take in such event, time is of the esssence of the devise, and the estate does not become vested until the time of enjoyment is reached. Robb v. Belt, 12 B. Mon., 643; Jarman on Wills (5 Am. Ed.), vol. 2, p. 457; Willitt's Admr. v. Rutter's Admr., 84 Ky., 319; Roberts' Admr. v. Brinker, 4 Dana, 570; Briscoe's Devisees v. Wickliffe, 6 Dana, 158; Wedekind v. Hallenberg, 88 Ky., 114; Turman v. White's Heirs, 14 B. Mon., 560.

3. Dying without issue, with reference to the first taker or the holder of a particular estate, refers to such occurrence at any time. With reference to the holder of a remainder estate, it refers to such occurrence in the lifetime of the tenant of the particular estate. Crozier v. Cundall, 99 Ky., 202; Wills v. Wills, 85 Ky., 488; Poyntz v. Holland, 92 Ky., 642; Jones v. Moore, 96 Ky., 273; Maloney v. Schwing, 101 Ky., 715; Collins v. Thompson, 19 Rep., 1194; Lee v. Mumford, 19 Rep., 1585; Dorsey v. Maddox, 19 Rep., 1903.

4. For existence of dower, under the Kentucky statute, the husband must be actually and beneficially seised or entitled to such seisin of either a legal or equitable estate in fee-simple during the coverture. It can not exist where there is an intervening or outstanding estate of freehold. Ky. Stat., sec. 2132; 2 Minor's Institutes, 134, 135; Carter v. McDaniel, 94 Ky., 565; Fon-

Dohn's Exr. v. Dohn and Others.

taine v. Dunlap, 82 Ky., 321; Gully v. Ray, 18 B. Mon., 113; Butler v. Cheatham, 8 Bush, 594; Arnold v. Arnold, 8 B. Mon., 203; Bailey v. Duncan, 4 Mon., 256; Hamilton v. Hughes, 6 J. J. M., 581; Stevens v. Smith, 4 J. J. M., 64; Northcut v. Whipps, 12 Ben Mon., 67; Lawson v. Morton, 6 Dana, 472; Heed v. Ford, 16 B. Mon., 114; 10 A. & E. Ency. of Law (2d Ed.), 132, 133.

BRIEF FOR APPELLANTS, FRANK ED. CARLE, ELIZABETH FLORENCE CARLE, AND WILLIAM CARLE, BY WILLIAM KRIEGER, THEIR GUARDIAN AD LITEM.

POINTS AND AUTHORITIES.

1. The division of the *corpus* of the estate, both real and personal, is postponed until the death of the widow of Andrew Dohn, coupled with the fact that the youngest child is twenty-five years of age at the time of the widow's death. This is the time fixed by the testator for a division of his estate. Duncan v. Kennedy, 9 Bush, 580; Thackston v. Watson, 84 Ky., 208; Webster, Trustee v. Webster, 93 Ky., 634; Jones v. Moore, 96 Ky., 275; Hughes v. Hughes, 12 B. Mon., 115.

2. The vesting of the estate is made to happen on the event that the children or their issue surviving the death of the widow of Andrew Dohn, and also the time when the youngest child reaches the age of twenty-five years. Duncan v. Kennedy, 9 Bush, 580; Wilson v. Bryan, 90 Ky., 483; Hughes v. Hughes, 12 B. Mon., 115.

3. Each child takes a fee subject to be defeated in case he dies without leaving issue living at the time fixed by the testator for a division of his estate. Thackstun v. Watson, 84 Ky., 208; Birney v. Richardson, 4 Dana, 424; Jones v. Moore, 96 Ky., 275; Harris v. Berry, 7 Bush, 113; Sale v. Crutchfield, 8 Bush, 639. Early v. Douglass, &c.

ALFRED SELLIGMAN, ATTORNEY FOR FRANK DOHN'S WIDOW.

MEMORANDA OF FACTS.

The will of Andrew Dohn provided:

1. That $100 per month should be paid to his widow so long as she lives.

2. That $75 per month should be paid to each child, until the youngest should attain twenty-five years of age. The testator left four children, two of age and two infants, the youngest at his death being three years.

3. He devised to his children an equal share in the corpus of his estate, real and personal, but postponed possession until after the whole period, during which the prior monthly charges are

Dohn's 'Exr. v. Dohn and Others.

to be paid. Frank Dohn, a son of testator, survived him, but. has since died, intestate and without issue, leaving his mother and his widow as his sole heirs and distributees.

## POINTS MADE AND AUTHORITIES CITED.

1. Item 5 of said will reads: "I direct my executor and trustee to pay to each of my children the sum of seventy-five ($75) dollars. per month until my youngest child is twenty-five years of age."

This gives to each child in severalty the vested indefeasible right to receive for the period named the sum of seventy-five dollars per month, not subject to be divested by his or her death, but in that event, passing under the statute to his ci her representative. The terms looking to the future are annexed to the distribution and not to the gift. The reasons' for the postponement are not personal to the legatees, but for the convenience of the estate. It is in the nature of a bond *debitum in presenti; solvendum in futuro.* The amount to be 'paid is definite and if not paid will diminish by so much Frank Dohn's share of Andrew Dohn's estate, when the testator declared for equality. Stevenson v. Stevenson, 91 Ky., 51; Wallingford v. DeBell, 15 B. Mon., 551; Bryan v. Twigg, L. R., 3, ch. 183; 37 L. J. Ch., 249; Jones v. Randall, 1 J. & W., 100; Lewis v. Lewis, 16 Simon, (Ch.); May v. Wood, 3 Bro. C. C., 471; Gough v. Bult, 16 · Simon, 44; *In re* Ord, 12 Ch. D., 22; Maggofin v. Patton, 4 Rawle, (Pa.) 113; Everett v. Mount, 22 Ga., 323; Perry v. Rhodes, 2 Murph., 140; Felton v. Lawyer, 41 N. H., 202; Collier's Will, 40 Mo., 287; O'Byrne v. O'Byrne, 9 Md.; 512; Harris v. Fly, 7 Paige, C. R., 421; Fullers v. Winthrop, 3 Allen, 51; Travers v. Schell, 20 N. Y. Rep., 89; Slade v. Mittner, 4 Madden, 144; Maxwell v. McClintock, 10 Pa. Stat., 237; Loder v. Hatfield, 71 N. Y. Rep., 92.

2. The trustee insists that under clause six vesting must await the death of the life tenant and the youngest child, aged three at its father's death, attaining twenty-five years. This would require not less than twenty-two years, if the life tenant died presently and as much longer as she might live beyond that period. If this construction be granted, then the vesting may be postponed beyond lives in being and ten months and twenty-one years thereafter. The contingencies provided for do not necessarily happen within that series of lives. "It might not happen, and, therefore, would be equivalent to an indefinite failure of issue."

Such a construction will not be favored as it would render the limitation void as a perpetuity, and the estate nevertheless vest at once. Atty. Gen. v. Wallace, 7 B. M., 616; Armstrong v. Arm-

strong, 14 B. M., 346; Ludwig v. Combs, 1 Met., 128; Brashear v. Macey, 3 J. J. M. 91; Stevens v. Stevens, 21 Ky. Law Rep., 1315; Ky. Statutes, sec. 2360.

3. The will is plain without the assistance of rules of construction. The testator made an immediate unqualified gift to each child who survives him of seventy-five dollars per month, for a fixed period (Item 5), and 1-4 of the remainder after specific devises (Item 6). These interests vest at once but enjoyment of the latter is postponed until period of division, which is fixed for the convenience of the estate. For the same reason the legacy given in Item 5 is payable in installments.

.4. The law favors that construction which will render estates vested and not contingent. . . . If it be doubtful whether a legacy be vested or contingent, the law treats it as vested. . . . If the testator has annexed futurity to the substance of his bounty, and it is of the essence of the gift, then vesting is suspended. But if it merely relate to the enjoyment or payment of it, then it vests *in presenti*, unless it be made to depend on an event which may never happen, such as marriage, etc., and not to the happening of some event that must certainly come, such as one devisee reaching a particular age. The gift and the enjoyment are not the same thing, and the gift is vested though the enjoyment be postponed; "adverbs of time, when, etc., then, etc., until, etc., do not make anything necessary to precede the vesting of the remainder, but only express the time when the remainder shall take effect in possession, not when it shall become vested." If a prior interest is carved out of the estate, words apparently creative of a future interest, are construed as referring merely to futurity of possession, occasioned by the prior interest and as pointing out the termination of that interest and not designed to protract the vesting. Wedekind v. Hallenberg, 88 Ky., 114; Williams v. Williams, 18 B. M., 329; Briscoe's Devisee v. Wickliffe, 6 Dana, 162; Danforth v. Talbot, 7 B. M., 628; Grigsby v. Breckinridge, 12 B. M., 632; Allen v. VanMeter, 1 Met., 264; Martin v. Rennaker, 10 Ky. Law Rep., 469; Collier's Will, 40 Mo., 287.

:5. The devise to his children "after the death of my wife and when my youngest child is twenty-five years of age" gives not a contingent, but a vested estate in severalty to each child who survived the testator.

A devise to A when, or if he attain a certain age or upon the happening of events that are certain to occur, and there is an intermediate disposition of the estate, A takes an indefeasible vested estate upon the death of the testator not dependent upon reaching the age or period of distribution. And the vesting is

Dohn's Exr. v. Dohn and Others.

not·affected by the devise reading to A or his heirs, or "children
of deceased child to take parent's share" as such language will
be construed to refer to death occurring before that of the tes-
tator. Dembitz on Land Titles, vol. 1, p. 661; Wedekind v.
Hallenberg, 88 Ky., 114; Wills v. Wills, 85 Ky., 486; Martin v.
Rennaker, 10 Ky. Law Rep., 469; Trabue v. Terry, 10 Ky. Law
Rep., 345; Harmon v. Dyer, 11 Ky. Law Rep., 678; Williams v.
Williams, 91 Ky., 547; Bedford v. Bedford, 99 Ky., 276; Dan-
forth v. Talbot, 7 B. Mon., 623; Birney v. Richardson, 5 Dana,
424; Roberts v. Brinker, 4 Dana, 570; Grigsby v. Breckenridge,
12 B. Mon., 629; Moore v. Offut, 94 Ky., 568; Am. & Eng. Ency.
of Law, vol. 29, pp. 450, 451; Stephenson v. Fox, 125 Penn., 568,
11 Am. St. Rep., 922; Martin v. Kirby, 11 Grattan, 67; Linton v.
Laylock, 33 Ohio, 129; Marsh v. Hoyt, 161 Mass., 459; Goodwin
v. McDonald, 153 Mass., 481; Post v. Herberts, 12 C. E. Green
(27 N. J. Eq.) 540; Shattick, Admr. v. Stedman, 2 Pick., 467;
Eldridge v. Eldridge, 9 Cush., 516; Dale v. White, 33 Conn., 296;
Taylor v. Mesher, 29 Mich., 443; Collier's Will, 40 Mo. Rep.,
287; Jarman on Wills, vol. 3, p. 606; Young v. Kinkead, Admr.,
101 Ky., 253; Willets, Admr. v. Rutters, Admr., 84 Ky., 319.

The rule is different where the will provides a limitation over
to survivors of a class, or on event of "dying without issue,"
and the Kentutcky authorities are distinguished in the brief.

6. In devises to a person "or his heirs," unless palpably violative
of testator's intent, or will be changed to and so as to make in-
terest indefeasible and vested. Bedford v. Bedford, 99 Ky.,
276; Williams v. Williams, 91 Ky., 547; Jarman on Wills, vol.
2, pp. 81, 93.

7. It is presumed that a testator did not intend an estate given by
his will to lie dormant or undisposed of after his death, and a
slight circumstance will, therefore, be regarded·as showing that
he intended it to vest in the donee, although possession of it
may be postponed. The fact that the testator disposed of his
entire estate is a circumstance showing that its disposition was
in no manner contingent. An event depending on mere ef-
flux of time is not "an uncertain event" for the period fixed is
sure to be reached whether the person attain it in living or not.
Wedekind v. Hallenberg, 88 Ky., 114; Roberts v. Brinker, 4 Da-
na, 570; Williams v. Williams, 91 Ky., 547; Grigsby v. Breck-
enridge, 12 B. M., 629.

8. Though the devise is to children as a class, yet their interests are
several. They take as individuals and not as a class. The
words "each" and "share and share alike" indicate a sever-
ance of interest. Wallingford v. DeBell, 15 B. Mon., 551; Post.
v. Herberts, 12 C. E. G., 540.

.9. Where the direction is to do something *in futuro* with a sum of money, and the sum is not to be separated from the estate until that time, and the postponement is for the convenience of the estate, as appears in the case now in hand, and not by reason of any incapacity of the devisees to take, the estate vests at once. Wedekind v. Hallenberg, 88 Ky., 114; VanDyke v. Van derpool, '14 N. J. Eq., 198.

10. The fact that the will does not contain any direct words of gift such as "give" or "devise," but the direction is to pay or to be "divided in equal parts" does not effect the vesting of the estate, or the effectiveness of the gift. The phrases "to pay," "to divide," or "is directed to give" have been construed to be effective words to give an immediate interest in the estate. The creation of the trust is itself an irresistible inference of a gift. A gift to a trustee is a gift to the *cestui que trust* and directions as to payment go only to the time of enjoyment. Danforth v. Talbot, 8 B. Mon., 623; Roberts v. Brinker, 4 Dana, 570; Moore v. Offut, 94 Ky., 568; Linton v. Laylock, 33 Ohio, 129; Post v. Herberts, 12 C. E. Green, 540; Collier's Will, 40 Mo.; Bank-head v. Carlisle, 1 Hill Eq. (S. C.) 357; Brinson v. Wharton, 8 Ired Eq., (N. C.) 80; Blanchard v. Blanchard, 1 Allen, (Mass.) 223; Everett v. Mount, 22 Ga., 323; Felton v. Sawyer, 41 N. H., 202.

11. If Frank Dohn's interest in his father's estate was vested indefeasibly, his surviving widow has dower therein, regardless of the fact, that prior burden postpones its enjoyment in possession. The requirement is, that the "seisin" in law must be immediate. Mere postponement in possession is without effect. The true test is, that the child born to the widow of her marriage to Frank Dohn, would take the estate by inheritance from its father. Butler v. Cheatham, 8 Bush, 594; 2 Minor's Inst., 134; Stevens v. Smith, 4 J. J. Mar., 64; Chief v. Cave, 24 Beav., 259; Grigsby v. Breckenridge, 12 B. M., 629.

SUPPLEMENT BRIEF BY ALFRED SELLIGMAN FOR FRANK DOHN'S WIDOW.

Since the filing of the original brief herein, there has appeared a treatise, on the Law of Wills, by Professor William Herbert Page. This volume has a chapter on "Gifts of Income and Annuities," that sheds much light on this case. This author says, sections 599, 600—I make an excerpt and not literal quotation:

"Wherever the elements of the rule against perpetuities is not impaired, the law recognizes the right of the testator to dis-

pose of the income of his property by will and the gifts of this sort are constantly upheld." Authorities cited.

"And where the testator manifests a clear intention, he may give an income separate and apart from the principal so that the beneficiary has no interest whatever in the property from which the income is derived." Authorities cited.

"The payment of the income exists for as long a period as the testator shall designate by his will." *In re* Holford (C. A.) 3 Ch., 30; Morris v. Bolles, 65 Conn., 45; Angel v. Springfield Home, &c., 157 Mass., 241; New Eng. Trust Co. v. Pitkin, 163 Mass., 506; Bochus v. Balt. Pres. Assn., 77 Md., 50; Shiner v. Shiner, 50 N. J. Eq., 300; McBride estate, 152 Pa. Stat., 192; Engle's Estate, 166 Pa. Stat., 280.

"Thus a gift to A absolutely for the life of B does not terminate with A's death, but the income must be paid to A's administrator." Morris v. Bolles, 65 Conn., 45.

It does not appear that the author of this book has found any contrary decision, and nothing in his text shows any doubt but that it is his opinion that the devise of an income for a specific number of years, must be paid to the beneficary or his or her representatives.

LYTLE BUCHANAN for appellees, LIZZIE CARLE and AMELIA YOUNG.

## POINTS AND AUTHORITIES.

1. Testator's children each took under the 5th clause of the will, a vested and indefeasible right to receive from his estate the legacies therein bequeathed them, as the bequest was a present gift to be enjoyed in the future, the enjoyment being postponed merely for the convenience of the estate. Jarman on Wills (5th Amer. Ed), vol. 11, p. 458.

2. The devise in the 6th clause gave to the children surviving the testator, a vested and indefeasible right to the *corpus* of the estate, as the words seemingly creative of a future interest are to be construed as referring merely to the futurity of possession occasioned by the carving out of a prior interest, and as pointing out the determination of that interest, and not designed to postpone the vesting. The contingent provision for the issue of children dying, was intended to apply to only such of the children as should die in the lifetime of the testator. Grigsby, &c. v. Breckinridge, 12 B. Mon., 633; Allen v. Vanmeter, 1 Met., 271; Flournoy v. Flournoy, 4 Bush, 520.

OPINION OF THE COURT BY JUDGE DURELLE—REVERSING.

In October, 1898, Andrew Dohn died, leaving a widow, son, and three daughters. In December, 1899, the son, Frank Dohn, died without issue, but leaving a widow. Rebecca Dohn, one of the children of Andrew Dohn, is an infant about the age of 6 years; and, after the death of Frank Dohn, the appellant, as executor and trustee un- der the will, and as guardian of Rebecca, instituted this suit for the construction of clause 5 of the will of Andrew Dohn, and subsequently pleadings were filed by parties in interest asking a construction of the entire will. By his will, Andrew Dohn gave to his son a stock of gro- ceries and fixtures, providing that in the final settlement of the estate he should be charged therewith at the sum of $2,000. To the husband of his daughter Lizzie, he gave a similar stock to be charged at the same sum to her share. The residue of his estate was to be held in trust by the Louisville Trust Company, as executor and trustee for the trusts thereinafter stated, with a provision for the erection of a family monument. The will then pro- ceeds: "Item 4. My executor and trustee is directed to pay to my wife one hundred dollars ($100.00) per month during her lifetime, and my wife shall also have the free use and occupation of my residence and all the furni- ture therein for and during her natural life, free of rent; and all the taxes, insurance, and repairs shall be paid by my executor and trustee. Item 5. I direct my executor and trustee to pay to each of my children the sum of sev- enty-five dollars ($75.00) per month, until my youngest child is twenty-five (25) years of age. Item 6. After the death of my wife, and when my youngest child is twenty- five (25) years of age, my entire estate, real and personal, of every nature and description, shall be divided in equal

parts among my children or their heirs.    The issue of the
child or children dying shall inherit the share of its pa-
rent.    Item 7.  The share of my daughters shall be their
separate estate, free from the claim or control of any
husband they or either of them may have, with power to
dispose of same by will or deed.    Item 8.  I empower my
executor and trustee to advance to each of my children,
after the death of my wife, a sum not exceeding fifteen
hundred dollars ($1,500), to be charged to their share in
the final settlement, to be made when my youngest child
is twenty-five years of age.  My executor and trustee shall
keep all my property in good repair, and pay all taxes and
assessments promptly, and keep the property insured.
The net income left over and above the amounts required
for my wife and children, as herein stated, shall be in-
vested by my executor and trustee in good, well-paying
stocks, bonds, mortgages, or other property, and divided
as stated in item 6 herein.    In testimony whereof, wit-
ness my hand to this, my last will and testament, this
17th day of September, 1892, at Louisville, Ky."    No is-
sue of fact was presented for decision.    Upon final hear-
ing the learned special judge decided that each of the
four children took a vested right to receive $75 per month
until Rebecca, the youngest child of Andrew Dohn, would
become 25 years of age, which will occur on January 18,
1920; that, Frank J. Dohn having died intestate, his right
passed to his administrator; and his mother and his wid-
ow, being his only heirs at law, were entitled each to one-
half of such monthly installments.    It was also held that
on the death of Andrew Dohn each child took a vested
right to a one-fourth interest in all the personal estate
left by Andrew Dohn, and, Frank Dohn having died in-
testate and without issue, his right to an undivided one-

fourth interest in such personalty passed to his adminis-
trator, and, there being no creditors of his estate, his
share of such personalty goes equally to his mother and
widow, his only heirs at law, whose rights are, however,
taken subject to the provision that the trust company
shall hold and manage the estate until the termination of
the trust.    It was further held that at the death of An-
drew Dohn each child took a vested right to an equal, un-
divided one-fourth interest in the real property left by
Andrew Dohn, and that Frank Dohn's one-fourth interest
descended to his mother, with a right of dower therein
in his widow, the enjoyment of which is postponed until
the termination of the trust.    It was further held that
the trust company is to hold all the estate, real and per-
sonal, and apply as directed the rents and profits thereof,
until the death of Andrew Dohn's widow, and until Re-
becca, his youngest child, shall arrive at the age of 25
years, which will be on January 18, 1920, or so long as
it may be necessary to execute the trust created in the will
and to pay the monthly installments of $100 to Andrew
Dohn's widow, and $75 each to his children or their rep-
resentatives; it being further adjudged that, if Rebecca
shall die under the age of 25 years, and Andrew Dohn's
widow shall be already dead, or upon the death of Rebec-
ca under 25 years of age and upon the death of Andrew
Dohn's widow after such death of Rebecca, the monthly
payments shall cease, and the estate shall be paid over
by the trustee as directed in the previous provisions of
the judgment.

On behalf of appellant trust company, as executor, trus-
tee, and guardian, it was urged that it was error to ad-
judge that the bequest of $75 a month to Frank Dohn

survived to his administrator; that such bequest is to
continue until January 18, 1920; and that he took a vested
right upon the death of his father in the corpus of An-
drew Dohn's real and personal estate, in which his widow
is entitled to share as distributee of the personalty and
dowress of the realty.    The objection to the provision
fixing the duration of the monthly payments is not well
taken, as the provision with respect thereto is modified by
a subsequent provision of the judgment which contem-
plates an earlier stoppage of such payments.    It is con-
tended for appellant that the devise of $75 per month to
each child until the youngest child is 25 years of age was
intended for the maintenance and support of such child,
and was wholly personal to the legatees, or, at all events,
was for the benefit only of those who were to take the
estate under item 6.    We are of opinion that the second
alternative presented by appellant upon this question is
not tenable, and that the bequest was either personal, and
ceased upon the death of the legatee, or was a vested in-
terest, which continued until the termination of the trust.
There is no clause of substitution, as in item 6.    Nor do
we see how items 5 and 6, which provide for payments at
entirely different times, can be so construed together as
to make the last clause of item 6 apply to the gift in item
5, so as to make the issue of a dead child take the place of
the parent.    Nor do we think that by fair construction
the gift can be construed as limited to the life of the lega-
tee.    Apt words for such a limitation were used in the
clause immediately preceding with reference to the
monthly payments to the widow, and were omitted from
this clause.    Upon the other hand, the gift is absolute
in its terms; applies equally to each one of the children;
the same duration is fixed for each; and no provision is

made for the payments ceasing, or for the substitution of
any other beneficiary, in the event of the death of any of
the legatees before the period fixed for terminating the
payments, though such a contingency was evidently in
contemplation, as shown by the succeeding clause. More-
over, the testator evidently aimed at equality among his
children.     This is evidenced by the provision made for
charging up the advancements made to his son and son-
in-law.     It seems clear that the testator did not intend,
in the event of the death of a child leaving issue, that
such issue should be cut off from the receipt of all bene-
fit from his estate until his youngest child should arrive
at the age of 25 years, which would be the effect of hold-
ing that this gift was personal to each legatee, and ceased
upon his death.     We are of opinion that by this item a
charge was created upon his estate in favor of each child
for the period fixed by him, and the right thereto vested
upon the death of the testator.     In other words, it was
the gift of an annuity.     It may be admitted that it is
quite probable the testator did not intend the provision
for his wife to be increased, as is done by this construc-
tion; but that is an unforeseen result of carrying out his
actual intention. The intent of the testator being ascer-
tained, the unforseen results which follow can not change
the construction.     In this conclusion we are supported
by the case of Stevenson's Ex'rs v. Stevenson, 91 Ky., 51,
12 R., 658 (14 S. W., 955), in which the will provided: "I direct
that $700 per annum be paid to my daughter, Sallie Coles
Stevenson, during each and every year of my wife's life."
The legatee died before the testator's widow, leaving two
infant children.     The question was whether the gift was
personal to the daughter, and ceased at her death, or
should continue until the death of the testator's widow.

It was held that the payment of the $700 per annum was a charge on the estate until the death of the widow.    See, also, Morris v. Bolles, 65 Conn., 45, (31 Atl., 538); Page, Wills, 599, 600.

The next question is whether the estates devised under item 6 are conditional upon the survival of the beneficiaries until the time fixed for distribution.    That section provides:    "Item 6. After the death of my wife, and when my youngest child is twenty-five years of age, my entire estate, real and personal, of every nature and description, shall be divided in equal parts among my children or their heirs.    The issue of the child or children dying shall inherit the share of its parent."    Appellees contend that the language used in this item presents a case for the application of the rule of construction of devises that the "policy of the law is to let the fee vest at the earliest possible time" (1 Dembitz, Land Tit., 661); i. e. upon the death of the testator, that the estate then vested in the children who survived the testator, or in the issue of such as had died before that time; and upon the subsequent death of Frank Dohn his estate passed to his heirs subject to the widow's right of dower and distributable share.    Some importance is attached in argument to the language which provides that "the issue of the child or children dying shall inherit the share of its parent," it being urged that the word "inherit" is used as a word of limitation, to indicate that the issue of a dead child should take from and through the parent, and not from the testator.    But, if the death of the child be referred to the period before the testator's death, it seems obvious that little weight can be given to this argument, for in that view the issue would not inherit at all, either from its parent or from the testator, but would take under the will.

Indeed, it seems probable that the word "inherit" is loose-ly used in lieu of "take," as frequently occurs in wills. Nor can we perceive much force in the argument that a perpetuity is created by the construction that the testa-tor meant that the persons answering the description of children, or issue of dead children, at the death of the widow and when the youngest child is 25 years of age, shall then be vested with the estate, because of the fact that the time of such vesting is definitely ascertainable as the 18th of January, 1920.　No one is here contending that January 18, 1920, is fixed as the time of the vesting of the estate, or as the time of division.　It seems con-ceded upon all sides that the distribution is to take place upon the happening of whichever of two events shall take place last,—one the death of the widow, the other the ar-rival at 25 years of age of such child of the testator as shall then be his youngest living child.　If the child who is now the youngest shall die in infancy, the next older living child's arrival at the age of 25 years will become one of the elements determining the time of distribution; and it makes no difference how many degrees removed from the testator the final takers may be, provided the life or lives selected to determine the vesting are in being at the time the will takes effect.

It is argued with much ability that the estate vested in those children who survived the testator, though the distribution and possession of the corpus of the estate was postponed until the period indicated; that the post-ponement of possession was not with reference to any needs of the devisees, or to their capacity for the enjoy-ment of the estate, but solely for the convenience of the estate, to enable the trustee to make the monthly pay-ments provided for in an earlier clause of the will.　A

number of authorities have been very plausibly cited on behalf of appellees in support of this contention. But the majority of the court have reached a different conclusion as to the construction to be placed upon the language used in this clause. Except by the sixth item of the will, no estate in the corpus is devised to any of the descendants of the testator. The whole estate under the third item, is given to the appellant company in trust for the uses thereafter named. Those were to manage the estate; pay taxes, insurance, and repairs; collect rents and profits, and out of the income pay the monthly installments provided for in the fourth and fifth clauses; the allowance to the wife being undoubtedly a provision for her maintenance during life, and those to the children being presumably for the same purpose. The surplus income was to be invested with the principal. In item 6 alone is there any devise of the corpus of the estate. That devise is coupled with and follows the provision for the time of distribution. This devise was made by the testator to his children or their heirs. Upon the happening of both the events provided for, his estate was to be divided among his children or their heirs. The language up to this point indicates strongly an intention that it was to be divided among those persons who should then answer to the description of his children or their heirs; that is, the heirs of such as might die during the period between the testator's death and the time fixed for distribution. The age of the testator at the time he made his will would indicate that he expected all of his children to survive him. The clause then proceeds in a separate sentence to provide that "the issue of the child or children dying shall inherit the share of its parent." For what did this sentence provide? If the previous portion of the

clause provided for a vested estate in each child at the
death of the testator, does this sentence add anything to
that construction?    We think not.    On the contrary, it
seems rather to provide a clause of substitution of devi-
sees, and at a different period, viz., at the period of distri-
bution.    Assume, for the sake of argument, that the tes-
tator intended to give each child alive at the time of his
death a vested estate, but to postpone the enjoyment and
possession, except a portion of the income, what would be
the natural and usual mode of making the provision?
Undoubtedly, it would be to make the devise directly to
them, with a provision that the trustee should hold the
estate until the period of distribution; or, to the trustee
in trust for the children, with directions to pay certain
monthly allowances until the period of distribution, when
the corpus should be distributed.    Nothing of that
kind appears here.    It is given directly to the trus-
tee, with directions for its management until the period
of distribution.    Certain monthly installments are to be
paid out of the net income, and these in the aggregate,
if we include the monthly payments to the widow, ap-
proximate the amount of the net income.    But it is evi-
dent that the testator expected there would be a surplus
during the whole period of the management by the trus-
tee, and undoubtedly that surplus would be increased in
case of the death of the widow before the youngest child
arrived at the age of 25 years, which was the natural or-
der of events.    This clause did not give an interest in
praesenti payable in futuro.    It did not indicate a lega-
tee, and then provide that the legacy should not be paid
until the happening of a future event.    It is not here
provided that the profits shall be payable to the future
distributees, and at a designated period the corpus shall

be divided among them.   On the contrary, the corpus is
vested in a trustee, with directions to pay a fixed propor-
tion of the profits to another person.    The amount to be
paid to these legatees does not approximate the total
profits of the estate.    The period of distribution as then
fixed depends upon two events, and after all these comes
the devise to the children or the heirs, coupled with the
further provision that the issue of the child or children
dying shall inherit the share of its parent.    Dying when?
Naturally and logically this means before the period of
distribution; before the period when the devise takes ef-
fect; during the continuance of the particular estate in
the trustee, which was created for the purpose of man-
aging the property, accumulating the surplus, and paying
a fixed part of the income to the children and to their
mother.    This is the natural construction of the language
used, and the one which must be given it unless the rule
of policy in favor of speedy vesting of estates can over-
come it.    The argument of Chief Justice Robertson in
Roberts' Ex'rs v. Brinker, 4 Dana, 570, strongly supports
the conclusion we have reached    upon    this    question,
though the special facts in that case led the court to a
different conclusion.    It also supports the conclusion we
have    reached    as to the gift of monthly installments,
which were present gifts, though payable in futuro.    In
that case it was said: "Bequests of personalty are con-
strued generally according to the rules of the civil law,
and, according to the doctrines of that Code, adopted by
courts of equity, which take cognizance of legacies, a leg-
acy given when the legatees marry, or attain a prescribed
age, without anything else in the will controlling or aiding
the interpretation of it, will be understood to be contin-
gent, and 'when' will in such a case be deemed synonymous

with 'if,' or some other word or phrase implying a condition precedent to the vestiture of any certain interest. And, accordingly, a bequest of money to an infant at twenty-one years of age, or when he shall become twenty-one years old, will be construed to mean that he shall have no interest unless he shall attain the prescribed age. But a legacy to an infant in praesenti, to be paid in futuro, is deemed to be vested, and as not depending on his living until the time fixed for payment. And it is also an established rule of construction respecting legacies that when there is no other legatory expression or intention than that implied in a direction to pay or distribute at a future time, or on a contingent event, the bequest, nothing else appearing, should be considered as contingent. ' But as, prima facie, it may be presumed that a testator did not intend that any interest bequeathed in his will should lie dormant or undisposed of after his death, or should ever lapse, therefore a slight circumstance may be sufficient for showing that a legacy is vested, and not contingent." See, also, Briscoe's Devisees v. Wickliffe, 6 Dana, 158. In 2 Jarm. Wills, p. 462, it is said: "An annual allowance for maintenance (although equal in amount to the interest) will not, unless given as interest upon the legacy, make the legacy vested. The gifts are perfectly distinct, and the title to the annual allowance actually given could not be affected by the interest on the legacy not amounting to so large a sum." In Robb v. Belt, 12 B. Mon. 643, the bequest was to testator's wife during her widowhood, with the proviso that, should she die unmarried, "the property is equally to be divided among my eight children, or their heirs above expressed." It was held, in an opinion by Judge Marshall, that no absolute estate passed to any of the children.

Dohn's Exr. v. Dohn and Others.

Said the court:    "But the will reads sensibly in its pres-
ent form, makes a provision just and natural for the con-
tingency evidently contemplated of some of  the eight
children dying before the division was to take place, and
may have a certain and definite and legal operation ac-
cording to its letter    There is, therefore, no ground for
changing the word 'or' into 'and.'  . . .    We  are  of
opinion, therefore, that the proper construction of the
clause, being that the division is to be made between the
testator's children who may be living at the time of the
event referred to, and the heirs of the body of such as
may then be dead, which is the only devise to any of them,
the testator did intend to control the property until the
happening of the event when the division was to be made;
and that whatever interest any one or all of his children
may have had upon his death was subject to that control,
and therefore subject to be defeated or terminated by the
death of such child before the time of division, and be-
longed, by the will, to the heir or heirs of the body of such
decedent living at the time fixed for the division."    In
Willett's Adm'r v. Rutter's Adm'r, 84 Ky., 319; 8 R., 304 (1 S.
W., 640), the clause for construction was as follows: "If, at
my death, there shall be any surplus stock or personal
property, or any cash, or cash notes, on hand, it is my will
and desire that the stock and personal property may be
sold, the money collected and loaned out during the life
of my wife, and at her death I desire that it may be divid-
ed between my said daughter and granddaughter."    In
that case, Judge Bennett delivering the opinion of the
court, it was held that the vesting of the estate was post-
poned until the arrival of the time for its distribution,
the two being inseparably joined, quoting from Jarm.
Wills, p. 760, where it is said that in "the rules which reg-

ulate the vesting of personal legacies, the payment of which is postponed to a period subsequent to the decease of the testator, a leading distinction is that, if futurity is annexed to the substance of the gift, the vesting is sus-pended, but, if it appears to relate to the time of payment, the legacy vests instanter." Again, the court in that case said: "Thus we see that when the gift is created simply by directing the payment or distribution of the legacy at some future period of time after the decease of the testator, or upon the happening of a contingent event, and there is no provision in the will for vesting the legacy immediately, then the future time fixed, or the happening of the contingency is of the essence of the gift." The authorities from this state cited on behalf of appellees are readily distinguishable from the case at bar. Williams v. Williams, 91 Ky., 547 (13 R., 293) 16 S. W., 361), and Wedekind v. Hallenberg, 88 Ky., 114 (10 R., 696) (10 S. W., 368), are perhaps the strongest of these authorities. Williams v. Williams is, in the opinion, distinguished from Robb v. Belt, *supra*, by the peculiar circumstances set forth in the opinion; and in Wedekind v. Hallenberg, Judge Holt, delivering the opinion, states the exact doctrine upon which we now proceed: "If the testator has annexed futurity to the substance of his bounty, and it is of the essence of the gift, then its vesting is suspended; but, if it merely relate to the enjoyment or payment of it, then it vests in praesenti, unless this be made to depend upon an event which may never happen. The legacy is to be regarded as vested or contingent, according as the time when it is to take is annexed to the enjoyment of the gift or the gift itself. If there be no substantive gift, and it is only implied from a direction to pay, then the devise is contingent, unless a contrary intention may be collected from

the words or context, or the payment be postponed for the convenience of the property or estate, or to let in some other interest." In the case at bar we do not think a contrary intention may be collected from the words or context, or that the payment directed was postponed for the convenience of the estate, or to let in some other interest. Giving all proper weight to the settled policy of the law that estates should vest at the earliest moment, we do not think that policy should be permitted to override the natural import of the language here used, in the absence of circumstances to indicate a different intention, which do not, in our judgment, here appear. The judgment is reversed, with directions to set aside the judgment and enter judgment in accordance with this opinion.

ON PETITION FOR MODIFICATION OF THE OPINION, JUNE 22, 1901.

Held:   1. As a will speaks from the death of the testator, a reference therein to the arrival of testator's youngest child at the age of twenty-five years applies to the youngest child at the date of testator's death, though born after the execution of the will.

2. Where a testator by his will directed a monthly payment to his widow during her life, and to each of his children until the youngest child should reach the age of twenty-five years, and then provided that after the death of his wife, and when his youngest child should reach twenty-five years of age, his entire estate should be divided among his children or their heirs, the monthly payments to the children must continue, in any event, until the death of the widow, though the only child under twenty-five years of age may die before that time.

EXTENDED OPINION BY JUDGE DuRELLE, JUNE 22, 1901.

PER CURIAM.   The will speaks from the death of the testator, and the reference therein to the arrival at the age of 25 years of his youngest child must be referred to Rebecca Dohn, who was the youngest child at the date of

testator's death, although born after the execution of the will.

· The provision for an annuity in favor of each of the children was apparently intended for their support and maintenance during the continuance of the trust. We can hardly suppose that it was the intention of the testator to leave his children, two of whom are females, without the means of subsistence until the death of his wife, should the youngest child die before such death. This construction may seem somewhat strained, and in violation of the literal meaning of one of the clauses of the will; but, taking the whole will together, and deducing the testator's intention therefrom as best we may, this construction is probably as close to that intention as we can arrive, and seems to be supported to some extent by respectable authority. Gray v. Dickinson (11 Ky. L. R. 890) (13 S. W., 209); Boraston's Case, 3 Coke, 19; Briscoe's Devisees v. Wickliffe, 6 Dana, 162; Danforth v. Talbot's Adm'r, 7 B. Mon., 627; Davis v. Wood, 17 B Mon., 91; McDaniel's Guardian v. McDaniel, 91 Ky., 157 (15 S. W., 129). From this it would follow that the monthly payments to the children should continue until Rebecca Dohn arrives at the age of 25 years, should she live so long, and, in case of her death before the death of the testator's widow, until the next youngest child reaches the age of 25 years, and in any event until the death of the testator's widow.